# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In the Matter of:            }

                             }

TAVARUS DEAUNTA MILLER    }    CASE NO. 06-81889-JAC-13
SSN: XXX-XX-7933            }
LATONYA DIONNE MILLER     }
SSN: XXX-XX-5639,         }

                             }    CHAPTER 13

              Debtor(s).     }


              Defendant(s).

## MEMORANDUM OPINION

The dispute before the Court concerns the proper application of the disposable income test to above median income debtors under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). This case came before the Court on trustee's objection to confirmation of the debtors' proposed Chapter 13 plan on the grounds that the debtors are not committing all of their projected disposable income to make payments to unsecured creditors as required by 11 U.S.C. § 1325(b)(1)(B). The debtors' proposed plan payment exceeds the amount calculated on Form B22C as the debtors' monthly disposable income under § 1325(b)(2), but the proposed payment is less than the amount reflected on Schedules I and J as the debtors' monthly net income. The debtors argue that BAPCPA changed the method for determining "disposable income" for above median income debtors under 11 U.S.C. § 1325(b)(2) and (3) and that their proposed plan payment satisfies the new disposable income test for above median income debtors even though Schedules I and J reflect excess actual disposable income that is not being committed to the plan.

The trustee has not filed an objection to a specific expense listed by the debtors on Form B22C and takes no independent position with respect to the issues before the Court. The trustee simply questions how Schedules I and J and Form B22C should be reconciled in determining disposable income for above median income debtors.

## FINDINGS OF FACT

The debtors' Chapter 13 plan provides for monthly plan payments of $908.00 for 60 months. From that amount, $803.14 will be paid as fixed payments on secured claims and general unsecured creditors will receive a distribution of approximately 5%. Unsecured creditors have filed claims in the case totaling $147,506.24.[1] Filed secured claims total $283,071.90.

Pursuant to FED.R.BANKR.P. 1007, the debtors filed Form B22C, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, with their petition and schedules.[2] Form B22C is used by all Chapter 13 debtors to calculate current monthly income and the applicable Chapter 13 commitment period. Above median income debtors also use the form to calculate disposable income under § 1325(b)(2). Debtors' Form

---

[1]    The bar date to file claims expires January 22, 2007.

[2]    *See* Interim Bankruptcy Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure:

(6)  A debtor in a chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form, and, if the debtor has current monthly income greater than the median family income for the applicable state and family size, a calculation of disposable income in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form.

2

B22C reflects annualized current monthly income of $101,622.36, placing the debtors over the $50,617.00 median income for a family of three in the State of Alabama. Pursuant to the calculations called for under § 1325(b)(2) and (3), the debtors report on Form B22C total current monthly income of $8,468.53, total allowable deductions of $11,519.29, and monthly disposable income of negative $3,050.76. According to Schedules I and J, the debtors have total monthly income of $5,450.83, total monthly expenses of $4,113.89, leaving monthly net income of $1,336.94. Based on the negative monthly disposable income figure reflected on Form B22C, debtors argue that their plan is due to be confirmed despite the fact that their Chapter 13 payments would have been more under the pre-BAPCPA disposable income test using Schedules I and J.

## CONCLUSIONS OF LAW

The trustee's objection to confirmation is based upon § 1325(b)(1)(B) which provides in pertinent part as follows:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan --
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's **projected disposable income** to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(emphasis added)

3

Under § 1325(b)(1), the court may not confirm a Chapter 13 plan if an interested party files an objection unless the plan either pays all creditors in full, or provides that all of the debtor's "projected disposable income" will be applied to make payments to unsecured creditors under the plan. Because the debtors' plan will not pay creditors in full, the Court cannot confirm the plan unless it determines that the debtors are submitting all of their "projected disposable income" to unsecured creditors under the plan in conformity with § 1325(b)(1)(B).

Prior to the bankruptcy amendments, Schedules I and J were the primary source of evidence used to satisfy the disposable income test under § 1325(b). Upon objection to confirmation under § 1325(b), courts examined a debtor's current monthly income and expenses reported on Schedules I and J. Determining whether the debtor's reported Schedule J expenses were reasonably necessary for the support of the debtor or a dependant of the debtor was a fact-bound undertaking that required the court to make judgments about a debtor's lifestyle.

Under BAPCPA, the disposable income test now turns upon whether a debtor's current monthly income is above or below the applicable median family income.[3] Section 1325(b)(2) defines the term disposable income for purposes of § 1325(b)(1)(B) as current monthly income "less amounts reasonably necessary to be expended" generally for the debtor's support or that of a dependent. Section 1325(b)(3), then explains how the phrase

_____

[3]    *In re Alexander*, 344 B.R. 742, 746 (Bankr. E.D.N.C. 2006).

4

"amounts reasonably necessary to be expended" is to be determined for above median

income debtors.  Sections 1325(b)(2) and (3) provide in part as follows:

> (2)  For the purposes of this subsection, the term **"disposable income"** means
> current monthly income received by the debtor (other than child support
> payments, foster care payments, or disability payments for a dependent child
> made in accordance with applicable nonbankruptcy law to the extent
> reasonably necessary to be expended for such child) **less amounts reasonably
> necessary to be expended -**
>
> > (A)  (i)  for the maintenance or support of the debtor or a dependent of
> > the debtor, or for a domestic support obligation, that first becomes payable
> > after the date the petition is filed; and
> > > (ii)  for charitable contributions . . . ; and
> > (B)  if the debtor is engaged in business, for [allowed business expenses].
>
> (3)  **Amounts reasonably necessary to be expended under paragraph (2)
> shall** be determined in accordance with subparagraphs (A) and (B) of section
> 707(b)(2), if the debtor has current monthly income, when multiplied by 12,
> greater than [the applicable median income for a household the size of the
> debtors].

(emphasis added)

Now, as to above median income debtors, § 1325(b)(3) directs debtors to calculate

expenses based on the means test formula found in § 707(b)(2)(A) and (B). Section

707(b)(2)(A)(ii)(I) of the means test provides in part that the "debtor's monthly expenses

shall be the debtor's *applicable* monthly expense amounts specified under the National

Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories

specified as Other Necessary Expenses issued by the Internal Revenue Service."[4]  The

National and Local standard expense allowances are taken from IRS guidelines that are used

---

[4]     11 U.S.C. § 707(b)(2)(A)(ii)(I)(emphasis added).

to determine a taxpayer's ability to pay delinquent taxes. The National standards for living expenses is a fixed expense allowance for food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous expenses. The debtor is entitled to deduct the full amount of the allowance without regard to actual expenditures. Local standards include standard expense allowances for housing, utilities, and transportation. Housing and transportation costs are each divided into separate categories for ownership costs and other non-mortgage expenses and transportation operating costs. The non-mortgage expense and transportation operating expense categories are taken without regard to a debtor's actual expenditures. Subsequent subparts of § 707(b)(2)(A) describe additional allowed expense deductions that are based on a debtor's actual expenses. Above median income debtors calculate these means test deductions using Form B22C.

Section 1325(b)(3) provides that the "amounts reasonably necessary to be expended" for above median income debtors shall also be determined in accordance with § 707(b)(2)(B). Section 707(b)(2)(B) provides that "the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." By tying the disposable income definition under § 1325(b)(2) and (3) to subparagraphs (A) *and* (B) of § 707(b)(2), one court has held that Congress provided

6

"courts with a very limited ability to adjust both income and expenses under § 707(b)(2)(B)(i) based on a showing of 'special circumstances.'"[5]

Debtors argue § 1325(b)(2) and (3) unambiguously requires an above median income debtor to calculate disposable income using the means test deductions under § 707(b)(2) as reported on Form B22C without regard to the debtor's actual expenses listed on Schedule J. By the clear language of the statute, the disposable income test is no longer determined using an above median debtor's Schedules I and J actual income and expense figures. Instead, Congress has mandated that disposable income be determined under Form B22C using the calculations set forth in § 707(b)(2)(A) and (B).

To calculate disposable income for below median income debtors, reported decisions have held that the expense component of the disposable income test remains essentially the same. Section 1325(b)(2) provides that disposable income is the debtor's current monthly income other than child support payments, foster care payments, and disability payments for a dependent child "less amounts reasonably necessary to be expended" for the support of the debtor or a dependent of the debtor. Below median income debtors do not complete the calculation of means test deductions on Form B22C.[6] Instead, projected disposable income

---

[5]     *In re Hanks,* 2007 WL 60812 *5 (Bankr. D. Utah 2007).

[6] Below median income debtors are directed by Form B22C to skip the calculation of deductions allowed under § 707(b)(2), while above median income debtors proceed with the means test calculation to determine disposable income under § 1325(b)(2).

7

for below median income debtors continues to be calculated using Schedule J as the primary source of evidence of a debtor's reasonably necessary expenses.[7]

There is a split of authority in cases interpreting the disposable income provisions for above median income debtors under BAPCPA. One line of cases holds that post-BAPCPA, Schedule J is irrelevant to the determination of disposable income for above median income debtors. These cases find BAPCPA ushered in a new method for calculating disposable income for above median income debtors, "one designed to make the determination for those debtors 'formulaic.'"[8] *See In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006)(finding Schedule J expenses to be completely irrelevant to the determination of disposable income); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006)(finding debtors are only required to repay unsecured creditors the amount determined using Form B22C); *In re Barr*, 341 B.R. 181 (Bankr. M.D.N.C. 2006)(finding disposable income is governed solely by the IRS standards); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006)(finding disposable income for above median income debtors must determined based solely on application of IRS standards); *In re Hanks*, 2007 WL 60812 (Bankr. D. Utah 2007)(holding that Form B22C controls unless "special circumstances" can be shown under § 707(b)(2)(B)).

---

[7] *In re Dew*, 344 B.R. 655 (Bankr. N.D. Ala. 2006)(Robinson, J.)(finding that to determine whether a below median income debtor is offering all of his projected disposable income under a plan, the first and often last step is to look at the debtor's Schedules I and J); *In re Alexander,* 344 B.R. 742 (Bankr. E.D.N.C. 2006)(taking the below median income debtor's current monthly income reported on Part 1 of Form B22C and subtracting the total monthly expenses reported on Schedule J).

[8] *In re Farrar-Johnson* 353 B.R. 224, 228 (Bankr. N.D. Ill. 2006).

8

Other courts have turned to Schedules I and J finding that the terms "projected disposable income" as used in § 1325(b)(1)(B) and "disposable income" as used in § 1325(b)(2) are not synonymous. Because Congress added the word "projected" to § 1325(b)(1)(B) which is a forward looking concept, some courts hold that the expense component of "projected disposable income" must necessarily be a forward looking reflection of the debtor's projected expenses allowed by the means test. Other courts suggest that the concept of good faith under § 1325(a)(3) demands a review of the debtor's actual income and expenses. *See In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006)(rejecting mechanical application of the mathematical calculation of Form B22C);and *In re Kibbe*, 342 B.R. 411 (Bankr. D.N.H. 2006)(to give effect to the word "projected" under § 1325(b)(1)(B), the court found that disposable income must be determined by reference to Schedules I and J).

Another line of cases has focused upon the issue of whether debtors are entitled to deduct from disposable income payments on secured debts for which the debtors will not actually be liable as a result of their decision to surrender the collateral securing the debt. *See In re Love*, 350 B.R. 611 (Bankr. M.D. Ala. 2006)(finding that payments that will be avoided upon surrender of collateral at confirmation cannot be said to be scheduled as "contractually due" within the meaning of § 707(b)(2)(A)(iii)); *In re Crittendon*, 2006 WL 2547102 (Bankr. M.D.N.C. 2006)(determining disposable income by applying § 707(b)(2)(A) and (B) according to the circumstances existing on the date of the confirmation hearing); *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006)(finding that a debtor who

9

owns a vehicle outright may not deduct an ownership expense for that vehicle); *In re Oliver*, 2006 WL 2086691 (Bankr. D. Or. 2006)(finding debtors were entitled to include average payments on secured debts even where those payments would not be made under the Chapter 13 plan as proposed); *In re Grunert*, 353 B.R. 591 (Bankr. E.D. Wis. 2006)(finding debtors were entitled to take standard vehicle ownership expenses even though they owned their vehicles outright and thus had no actual vehicle ownership expense); *In re Haley*, 2006 WL 2987947 (Bankr. D.N.H. 2006)(finding that § 707(b)(2)(A)(ii)(I) does not indicate that the Local standards are to be used as caps, but instead they are fixed allowances, accordingly, debtors could deduct ownership expenses for vehicle for which they did not make car payments).

As can be seen in more detail below, the decisions remain split on whether the Form B22C means test calculation under § 1325(b)(2) is dispositive with respect to an above median income debtor's "projected disposable income" or serves merely as a starting point in determining the amount of projected disposable income.

### In re Farrar-Johnson

In *In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006)(Goldgar, J.), the bankruptcy court held that Schedule J expenses are irrelevant to the determination of disposable income and the "good faith" requirement in § 1325(a)(3) cannot be used to attack a debtor's calculation of disposable income. The court explained that a major objective of the means test as applied in Chapter 13 cases, as well as under Chapter 7, was to remove judicial discretion from the process:

10

Allowing Schedule J back into the disposable income equation, as the trustee urges, would undo what Congress sought to accomplish in section 1325(b)(3). One of the aims of the means test was to limit judicial involvement-and so judicial discretion-by making mechanical the determination of abuse under section 707(b). *See Gress,* 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006). The means test in section 1325(b)(3) is meant to have the same mechanical effect.[9]

Turning to the trustee's objection to the debtors' deduction for housing using the IRS local standard for which the debtors' qualified based upon the size of their household and locality, the court determined that the debtors were entitled to the deduction as being the "applicable" housing expense to which they were entitled even though the debtors lived in military housing and thus had no "actual" housing expense. Section 707(b)(2)(A)(ii)(I) permits a debtor to claim the "applicable monthly expense amounts" under the Local standards. Section 707(b)(2)(A)(ii)(I) defines monthly expenses not only as a debtor's "applicable" monthly expenses under the National and Local standards, but also as the debtor's "actual monthly expenses" for the categories specified as "Other Necessary Expenses." Whereas the "Other Necessary Expense" amounts are based on the debtor's actual expenses, expenses under the Local standards need only be those "applicable" to the debtor based on where the debtor lives and how large his household is without regard to whether the debtor actually incurs the expense. The court rejected decisions that interpret the word "applicable" in § 707(b)(2)(A)(ii)(I) to mean "actual." In doing so, the court stated that these courts never consider the presence of the word "actual" later in the same sentence.

---

[9] *In re Farrar-Johnson*, 353 B.R. at 229.

11

The court reasoned that its decision was supported not only by the clear language of the statute, but also by the legislative history.  The court wrote:

> Congress recognized that employing the IRS expense standards would be "'rigid and inflexible,'" and that those standards would be "'divorced from the debtor's actual circumstances.'" Eliminating flexibility was the point: the obligations of chapter 13 debtors would be subject to "clear, defined standards," no longer left "to the whim of a judicial proceeding." If, as one court has remarked, debtors now propose plan payments "based on a sort of parallel universe," that was what Congress had in mind.[10]

The court also refused to dismiss the debtors' case under § 1325(a)(3) as not having been filed in good faith stating that a plan that satisfied the "projected disposable income" test could not be denied confirmation as filed other than in good faith based on debtors' ability to make significantly  greater payments on their unsecured debts.

## *In re Alexander*

In *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), the trustee argued that the debtors were violating the good faith requirement under § 1325(a)(3) by not proposing plans that made substantial contributions to unsecured creditors for the applicable commitment period.  The trustee argued that the Schedule I and J comparisons revealed a more accurate depiction of disposable income than the calculation employed under BAPCPA. For the seven cases of above median income debtors before the court, the debtors uniformly had less disposable income under BAPCPA.

---

[10]  *In re Farrar-Johnson*, 353 B.R. 224, 231(Bankr. N.D. Ill. 2006)(citations omitted).

Case 06-81889-JAC13    Doc 48    Filed 01/18/07    Entered 01/18/07 14:39:12    Desc Main
Document    Page 12 of 23

The court found that § 1325(b)(2) and (3) "plainly set forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law."[11] To arrive at "projected disposable income," the court wrote, "one simply takes the calculation mandated by § 1325(b)(2) and does the math."[12]

The court rejected decisions holding that the plain language of § 1325(b)(1)(B) provides that the term "projected disposable income," is different from the term "disposable income" under section 1325(b)(2). If the two terms are not linked, then the term "disposable income" becomes "a floating definition with no apparent purpose."[13] Decisions that apply Schedules I and J to calculate "projected disposable income" fail to calculate "projected disposable income" with reference to the statutory definition of disposable income under BAPCPA. Under BAPCPA, debtors that do not have disposable income under § 1325(b)(2) and (3) do not have projected disposable income for purposes of § 1325(b)(1)(B). The court explained:

> Because the pre-BAPCPA definition of "disposable income" calculated a real number rather than a statutory artifact, it largely mirrored § 1322(a)(1)'s basic requirement that the debtor have future earnings or income "as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). Because disposable income largely took into consideration all income and all expenses, a debtor with no positive number simply had no means to fund the added costs of a Chapter 13 plan. The result is different under BAPCPA. For any number of

---

[11]   *In re Alexander*, 344 B.R. 742,747 (Bankr. E.D.N.C. 2006).

[12]   *Id.* at 749.

[13]   *Id.*

13

reasons, because a debtor has income not counted in the definition of current monthly income, has housing or transportation expenses less than the permissible IRS deductions, has huge secured debt for luxury items, that bizarrely, may be deducted in full as a reasonable and necessary expense, or wishes to continue to contribute to or repay a loan to her 401(k) plan rather than pay her unsecured creditors, a debtor under the new "disposable income" test may show a zero or negative number, yet may be able to make the required showing that she actually has enough income to fund a confirmable plan.

Turning to the trustee's good faith argument under § 1325(a)(3), the court reasoned that a debtor is in good faith compliance with the Code so long as the debtor calculates projected disposable income with specific reference to the new definition of disposable income and commits that figure to pay unsecured creditors.

*In re Hanks*

In *In re Hanks,* 2007 WL 60812 (Bankr. D. Utah 2007), the bankruptcy court rejected the line of cases that rely on the "alleged distinction between "disposable income" and "projected disposable income." These cases conclude that because the word "projected" is future-oriented, then it must necessarily follow that the word requires the court to consider both the future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B). Instead, the court found that to "project" a return to unsecured creditors, the new function of courts under BAPCPA is "solely to multiply the net 'disposable income' figure as calculated on Form B22C by the applicable commitment period. No more, no less."[14] Based upon the plain language of the statute, the Court held that "Form B22C is

---

[14]     *In re Hanks,* 2007 WL 60812 (Bank. D. Utah 2007).

14

determinative of the return to general unsecured creditors for above-median income debtors unless 'special circumstances' can be shown under § 707(b)(2)(B)."[15]

*In re Barr*

The court in *In re Barr*, 341 B.R. 181 (Bankr. M.D.N.C.)(Stocks, J.), determined whether the debtor was committing sufficient income to her Chapter 13 plan based solely on application of the IRS standards, without regard to the actual expenses listed on the debtor's bankruptcy schedules. The court refused to use § 1325(a)(3)'s good faith requirement to supplement this inquiry.

According to the debtor's Schedules I and J, the debtor had net disposable income of $2,038.00 per month while Form B22C reflected a negative figure of $76.47. The above median income debtor proposed a plan payment of $1,525.00 per month from which unsecured creditors would receive nothing. The court found that the mere fact that the debtor's actual expenses were less than the standard expenses that she could claim based on the IRS allowances, and the debtor had actual "excess" income that could have been used to increase payments to unsecured creditors, did not permit the court to require the debtor to commit this "excess" income to the plan, on the theory that the failure to do so prevented the plan from satisfying the good faith requirement. The court wrote that "[c]alcualting 'disposable income' for above-median-income debtors under new section 1325(b) is now separated from a review of Schedules I and J and no longer turns on the court's determination

---

[15] *Id.*

15

of what expenses are reasonably necessary for the debtor's support."[16]  If a debtor's actual expenses and deductions are less than those specified in § 707(b)(2), an above median income debtor may have "excess' income that such debtor is not required to commit to the payment of unsecured creditors.

## *In re Grady*

A Georgia bankruptcy court in *In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006), overruled the trustee's objection to confirmation and confirmed the debtors' plan using the disposable income figure reported in Schedule J rather than the disposable income figure calculated using Form B22C.  The trustee objected to confirmation of an above median income debtors' proposed Chapter 13 plan as not satisfying the "projected disposable income requirement" where the debtors' proposed their plan payment at the lower amount reflected in Schedules I and J.  The debtors' current monthly income reported on Schedule I had decreased from that reflected on the historical figure reflected on Form B22C because the debtor was no longer able to work after suffering a heart condition.  The trustee argued that the debtors were required to pay the full amount of disposable income reflected on Form B22C.  The court held that under the plain language of § 1325(b)(1)(B) and § 1325(b)(2) the term "projected disposable income" is different from the term "disposable income."  If Congress wanted the terms to be synonymous, the word "projected" would have been deleted from § 1325(b)(1)(B).  The court concluded that the word "projected" required the court to

---

[16]       *In re Barr,* 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006).

Case 06-81889-JAC13   Doc 48   Filed 01/18/07   Entered 01/18/07 14:39:12   Desc Main
Document      Page 16 of 23

consider both future and historical finances of a debtor in determining whether a debtor has complied with § 1325(b)(1)(B).

### In re Casey

The court in *In re Casey*, 2006 WL 3071401 (Bank. E.D. Wash. 2006) determined for above median income debtors, that the disposable income figure calculated on Form B22C, as modified by an anticipated change in financial circumstances known at the time of confirmation, constitutes projected disposable income for purposes of § 1325(b)(1). Form B22C is a starting point for the court's disposable income inquiry. To give meaning to the word "projected," the court must consider both the debtor's future and historical finances. Where at confirmation there is no indication that the debtor's financial circumstances will change, the figure on Form B22C will in reality be the debtor's "projected disposable income."

### In re Crittendon

In *In re Crittendon,* 2006 WL 2547102 (Bankr. M.D. N.C. 2006), the *Barr* court faced an objection filed by the trustee to Form B22C expenses for secured debts. The trustee objected to the deductions on the grounds that the collateral securing the debts had been or would be surrendered by the debtors upon confirmation of the plan and no further payments were to be made on such debts. The debtors argued that the challenged payments had to be allowed pursuant to § 707(b)(2)(A)(iii) which provides that:

17

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of -

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the petition date.

The court agreed with the debtors' argument that the means test is a backward looking test, but only in the context of a Chapter 7 case in which the court must determine whether the granting of relief would be an abuse of Chapter 7. In the context of a Chapter 13 case, the timing of the application of § 707(b)(2)(A) and (B) is different. Section 1325(b)(1) contains the language "as of the effective date of the plan," followed by subparagraphs (A) and (B). The court found that this means that the determination called for under § 1325(b)(1)(B) depends upon whether *as of the effective date of the plan,* the plan commits all of the debtor's projected disposable income to make payments to unsecured creditors. Accordingly, the court concluded that disposable income must be determined by applying § 707(b)(2)(A) and (B) according to the "pertinent circumstances existing on the date of the confirmation hearing, rather than on the basis of the circumstances existing on the petition date."[17]

As for secured debt payments provided for in § 707(b)(2)(A)(iii), the court determined that it is necessary to determine whether at the time of the confirmation hearing the deduction in question falls within § 707(b)(2)(A)(iii). The court explained:

Section 707(b)(2)(A)(iii) applies to monthly payments "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition. . . ." Under this language, the payments must be scheduled as contractually due in the future and the payments must be

---

[17]    *In re Crittendon*, 2006 WL 2547102 *3 (Bankr. M.D.N.C. 2006).

18

payments to secured creditors in order to be deductible under section 707(b)(2)(iii) [sic].

The court concluded that the terms of the plan determine whether payments have been scheduled for payment in the future and also establish the classification of creditors on the effective date of the plan. The confirmation order constitutes a new agreement between the parties and is controlling as to the payments to be made and as to which creditors are secured. Payments to creditors that would not be made post confirmation due to the debtor's surrender of collateral were not scheduled for payment in the future. Hence, the payments did not constitute payments to secured creditors for purposes of § 707(b)(2)(A)(iii).

*In re Edmunds*

The court in *In re Edmunds,* 350 B.R. 636 (Bankr. D. S.C. 2006)(Waites, J.), considered a Chapter 13 trustee's objection to confirmation of plans proposed by "above median income" debtors in two separate cases in which the trustee asserted that the debtors were not committing their "projected disposable income" to their proposed plans and that the plans were not proposed in good faith. The trustee argued that the debtors were improperly deducting secured debts that would be treated as unsecured claims in their proposed plans and that Form B22C did not accurately reflect the debtors' actual expenses, reflected on Schedule J, and thus their available income for distribution to unsecured creditors. Debtors argued that they were only required to pay the amount determined by 11 U.S.C. § 1325(b)(2) and (3) as calculated using Form B22C.

19

The court explained that the plain language of § 1325(b) unambiguously indicates that prospective, not historical, expenses are to be used to calculate "projected disposable income:"

> Congress has mandated that courts allow debtors those categories of expenses recognized under the Means Test so long as those expenses are "reasonably necessary" and "to be expended." *See* 11 U.S.C. § 1325(b)(2) and (3). The word "projected" is relevant to determine allowed expenses because "projected" modifies "disposable income," which is a computation of both income and expenses. . . . . The phrases "to be received in the applicable commitment period" and "to be expended" are also relevant because they are a clear indication that Congress intended the courts to determine "projected disposable income" as of the petition date forward. . . . . Finally, § 707(b)(2)(A) divides allowed expenses into two categories those expenses that are "applicable" and those expenses that are "actual." . . . . Applicable expenses are those standard expenses set by IRS guidelines. Actual expenses must be determined with reference to Schedule J and a debtor's treatment of debts in his proposed plan.

Turning to BAPCPA's legislative history, the court stated that nothing in its legislative history indicates that Congress intended to change the pre-BAPCPA practice of considering a debtor's projected financial situation for purposes of determining good faith under § 1325(a)(3) and disposable income under § 1325(b)(1). The court noted that Congress expressed concern that some debtors, who are able to repay a significant portion of their debts were not doing so under the old law. The court stated that if the means test "were to eclipse the application of the traditional elements of good faith for an above median income debtor, then below median income debtors . . . . may be required to pay more than those debtors more able to pay." The court concluded that this result was not intended by Congress.

20

## CONCLUSION

In this case, the trustee has not questioned the manner in which the debtors completed Form B22C or challenged any specific deduction listed. Rather the trustee's focus is upon the excess income calculated under Schedules I and J and how to reconcile the excess compared with the negative disposable income figure reflected on Form B22C.

The Court adopts the line of cases finding that Form B22C is dispositive with respect to an above-median income debtor's "projected disposable income." Section 1325(b)(3) clearly states that the amounts reasonably necessary to be expended for purposes of determining disposable income "shall" be determined under § 707(b)(2)(A) and (B). The disposable income calculations made on Form B22C are drawn, not from the debtor's Schedule J, but from the Internal Revenue Service standards and additional deductions allowed under § 707(b)(2).[18] Those courts that argue Congress intended something more when it referred to "projected disposable income" in § 1325(b)(1)(B) fail to address the fact that Congress defined "disposable income" subsequently in § 1325(b)(2).[19] Section 1325(b)(1)(B) first makes reference to "projected disposable income," and then § 1325(b)(2) goes on to explain what is being "projected."[20]

---

[18] *In re Farrar-Johnson*, 353 B.R. 224, 228 (Bankr. N.D. Ill. 2006).

[19] *In re Rotunda*, 349 B.R. 324, 331 (Bankr. N.D.N.Y. 2006).

[20] *Id.*

Case 06-81889-JAC13   Doc 48   Filed 01/18/07   Entered 01/18/07 14:39:12   Desc Main
Document      Page 21 of 23

Courts that turn to Schedules I and J to calculate disposable income also fail to recognize that Congress tied the calculation of disposable income for above median income debtors not only to § 707(b)(2)(A) under the means test, but also to § 707(b)(2)(B). Under § 707(b)(2)(B), the court may consider special circumstances that make "such expenses or adjustments to income necessary and reasonable."[21] If special circumstances necessitate a deviation from Form B22C, those circumstances can be raised under § 707(b)(2)(B) without turning to Schedules I and J.[22]

While courts continue to have unrestricted flexibility "in determining whether the expenses of the below-median income debtor are reasonably necessary,"[23] BAPCPA clearly limited the court's role in reviewing the expenses of above median income debtors. The means test calculations present a "backward looking litmus test performed using mathematical computations of arbitrary numbers, often having little to do with a particular debtor's actual circumstances and ability to pay a portion of debt."[24] By tying the phrase "amounts reasonably necessary to be expended" to the IRS standards, BAPCPA limited the judicial discretion exercised prior to the amendments in determining whether the expenses of an above median income debtor are reasonably necessary and replaced judicial discretion with the means test calculations under § 707(b)(2). Congress determined the fairness of the

---

[21] 11 U.S.C. § 707(b)(2)(B)(ii)(II).

[22] *See In re Hanks*, 2007 WL 60812 (Bankr. D. Utah).

[23] *In re Alexander*, 344 B.R. 742,746 (Bankr E.D.N.C. 2006).

[24] *In re Hartwick*, 2006 WL 2938700 (Bankr. D. Minn.2006).

Case 06-81889-JAC13    Doc 48    Filed 01/18/07    Entered 01/18/07 14:39:12    Desc Main
Document    Page 22 of 23

application of the means test, and as one court explained "a major objective of the legislation was to remove judicial discretion from the process."[25]

As the trustee does not object to the debtors' calculation of disposable income as shown on Form B22C, the Court finds that the trustee's objection to confirmation is due to be overruled and the debtors' proposed Chapter 13 plan confirmed.

A separate order will be entered consistent with this opinion.

Dated: January 18, 2007

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc: Debtor(s)
    G. John Dezenberg, attorney for debtors
    Phillip Geddes, trustee

---

[25] *In re Hartwick*, 2006 WL 2938700 (Bankr. D. Minn.2006).

23